

# THE ATTORNEY GENERAL
# OF TEXAS

AUSTIN, TEXAS 78711

CRAWFORD C. MARTIN
ATTORNEY GENERAL

August 1, 1972

Hon. Clyde Whiteside
Chairman
Board of Pardons and Paroles          Opinion No. M-1187
Room 501 John H. Reagan Bldg.
Austin, Texas   78701                 Re:  Effect of Furman v.
                                           Georgia holding death
                                           penalty unconstitutional,
Dear Sirs:                                 and related questions.

        This is in response to your recent inquiry concerning appli-
cation of the recent U. S. Supreme Court decisions in Furman v.
Georgia (69-5003), Jackson v. Georgia (69-5030) and Branch v.
Texas (69-5031) ___ U.S. ___, 40 L.W. 4923, to procedures before
the Texas Board of Pardons and Paroles.  We quote your entire
letter (less formal parts):

        "The Texas Board of Pardons and Paroles respectfully
        requests your opinion concerning matters of commutation
        of sentence, as provided in Article 4, Section 11 of
        the Texas Constitution and other Texas laws.  In view
        of the recent United States Supreme court opinions
        concerning the death penalty in William Henry Furman
        vs. State of Georgia, et. al., and being cases numbers
        69-5003, 69-5030 and 69-5031.

        "It is the established policy of the Texas Board of
        Pardons and Paroles when considering commutation of
        sentences from death to life imprisonment that the
        sentencing trial court officials instigate application
        for such commutation by written request to the Board
        setting out its reason for seeking such commutation
        and requesting the Board to make such recommendation
        to the Governor for his action.  This Board does not
        solicit commutation application nor has it to my know-
        ledge ever initiated commutation without the request
        of the trial officials or the convicted defendant.
        This is the established procedure followed by this and
        prior Boards in such cases.  In view of the ruling of

the Supreme Court in the Furman case, and other cases numbered above, we would like to have a legal opinion upon the following questions:

"1.    Did the ruling in Furman vs. Georgia, #69-5003, 69-5030, and 69-3031 et. al., declare the death penalty unconstitutional, per se?

"2.    What is the present posture of death penalties assessed in Texas District Courts in the following catagories:

> (a)    Awaiting motion for new trial in Texas District Courts.
> (b)    Awaiting appeal to Texas Court of Criminal Appeals.
> (c)    Affirmed by the Texas Court of Criminal Appeals and awaiting certiorari to the Supreme Court of the United States.
> (d)    Penalties provided declared unconstitutional by the Supreme Court of the United States.
> (e)    Habeas Corpus proceedings pending under Article 11.07 Texas Code of Criminal Procedure.
> (f)    Habeas Corpus pending in various federal courts.

"3.    In view of the Board's policy outlined above, may this Board now act with regard to the above catagories of cases to recommend commutation to the Governor?

"4.    In the event of commutation of the death penalty to life imprisonment, does this Board have any responsibility for causing the individual to be re-sentenced?

"5.    What effect upon the action of this Board will result when a condemned person informs the Board in writing that he does not wish to receive commutation from death to life?"

I.

The decision of the U. S. Supreme Court in the three cited cases (combined) is a short per curiam decision which, with formal parts omitted, holds:

> "Certiorari was granted limited to the *following*
> question: 'Does the imposition and carrying out
> of the death penalty in [these cases] constitute
> cruel and unusual punishment in violation of the
> Eighth and Fourteenth Amendments?' 403 U.S. 952
> (1971). The Court holds that the imposition and
> carrying out of the death penalty in these
> cases constitutes cruel and unusual punishment
> in violation of the Eighth and Fourteenth Amend-
> ments. The judgment in each case is therefore
> reversed insofar as it leaves undisturbed the
> death sentence imposed, and the cases are
> remanded for further proceedings." (Emphasis
> added).

Then there follow nine opinions (five separate concurrences and
four joint and separate dissents).

We must point out the fact that at the time of the issu-
ance of this opinion the mandate of the United States Supreme
Court has not been issued and petitions for rehearing have been
filed in all three of the cases (as well as all other Texas
death penalty cases acted upon by that Court). We do not pre-
dict what the action of the Court upon these motions will be.
We can only provide you with our current understanding of these
decisions. The following discussion must be accepted in this
light.

After careful study of the order and the nine opinions, we
conclude that the death penalty, per se, has not been declared
constitutionally impermissible. The entire thrust of the com-
bined cases is to declare Texas (and other) procedures are
violative of "procedural due process" only as to the imposition
of death as a punishment for crime in the manner and under the
circumstances submitted.

In our opinion, these decisions make all current Texas death
sentences subject to successful attack in proper proceedings in
appropriate courts and prohibits the assessment of death in
current cases under present Texas statutes.

II.

You have advised this office that your inquiry with regard
to "posture" includes not only presently but also with regard
to posture in the event the death penalty should be commuted
to life imprisonment.

In Attorney General's Opinion M-981 (1971), this office advised that your board "generally can recommend and the Governor, based on such recommendation, can commute a death sentence to life imprisonment even though the conviction is on appeal and has not been finally determined by the Texas Courts. The Board and Governor may do the same even though the United States Supreme Court may reverse a judgment insofar as it imposes the death penalty and remands the case to the Texas Court for further proceedings in conformity with its judgment, so long as the Texas Court has taken no final action in the case."

We further advised you that your board "can recommend to the Governor that a death sentence be commuted to life imprisonment, and the Governor, pursuant to such recommendation, can commute the sentence without consent of the convict. Neither do we find in our laws any requirement that the Board of Pardons and Paroles conduct a hearing before it recommends commutation nor before commutation is given."

This conclusion is supported by the recent decision of the Court of Criminal Appeals in the case of Whan v. Texas, ___ S.W. 2d ___ (not yet reported but being Cause No. 41,789 on the docket of that court) delivered June 28, 1972. That opinion holds that the Governor may commute a death sentence to life even after the U. S. Supreme Court has declared the death penalty invalid or at any time after a verdict of guilty has been returned and the jury has fixed the penalty (but of course before a new trial has been granted by a court of competent authority). The opinion also noted that commutation does not affect the judgment but merely mitigates the punishment.

With such introductory statements, we will now analyze the categories submitted.

(a)

Where a death penalty conviction is pending motion for new trial in the District Court, the penalty may be commuted and the motion for new trial will be heard and disposed of on the merits asserted as if life imprisonment had been the original penalty imposed.

(b)

Where appellate review is pending in the Court of Criminal Appeals, the penalty may be commuted and the appeal may proceed.

We express no opinion on whether or not the Court of Criminal Appeals might return the cause to the District Court for further proceedings (such as sentencing, supplementary briefs, etc.) or treat death penalty questions as surplusage, etc., as that Court has not yet had an opportunity to act to provide guidelines in such matters and the Code of Criminal Procedure appears not to contemplate such a possibility.

(c)

Where certiorari is pending, the penalty may be commuted, thereby rendering death penalty questions moot (although other issues would remain unchanged).

(d)

Where the U. S. Supreme Court has granted death penalty relief and remanded the cause to the Court of Criminal Appeals (but where the Court of Criminal Appeals has not yet acted to grant a new trial), the penalty may be commuted and the Court of Criminal Appeals will re-affirm its judgment (this is the precise posture found in Whan v. State, supra).

(e)

Where habeas corpus proceedings are pending in Texas courts under Article 11.07, Texas Code of Criminal Procedure, commutation may be granted, thereby rendering moot any death penalty questions.

(f)

Where Federal habeas corpus proceedings are pending, commutation may be granted and it would then be incumbent upon counsel for the State to call this to the attention of the Federal Court for its consideration upon the issue of mootness.

It is our opinion that in all of the above categories, absent commutation, the court concerned must either grant a new trial (or in habeas corpus, order the release of the prisoner if a new trial is not granted).

III.

In view of the decision in Whan v. State, supra, it is our

opinion that the Board of Pardons and Paroles may now act with regard to recommending commutations in all cases in all categories. And since we find no prohibition to prevent the Board from acting sua sponte, we certainly find no prohibition against the Board requiring some initiative from either the State or the condemned person before consideration will be given to a recommendation. It is obviously within the inherent rule making power of the Board to establish orderly procedures for the disposition of matters within its jurisdiction.

IV.

We find no statutory burden upon the Board to concern itself with the sentencing or resentencing of persons commuted. This would be a matter entirely for the judiciary.

V.

In regard to the effect of notice from the condemned man that he opposes commutation, we quote again (as in A. G. Opinion #M-981) from the Court of Criminal Appeals decision in Ex Parte LeFors, 303 S.W.2d 394 (Tex.Crim. 1957) at p. 397:

> "Commutation of sentence means the change of the punishment assessed to a less severe one. It differs from a pardon in that it may be imposed without consent of the convict or against his will." (Emphasis added.)

Since the people of Texas have an interest in conserving judicial time and the immense cost of retrials, counsel for the State may properly petition for commutation to avoid such wasteful duplicity. It is our opinion that such a request from a condemned man should be considered by the Board along with all other factors but such request in no way prevents the Board from exercising its lawful discretion in making or withholding a recommendation to the Governor.

This question was disposed in Biddle v. Perovich, 274 U.S. 480 (U.S.S.Ct., 1927), wherein Mr. Justice Holmes stated for a unanimous court:

> "Both sides agree that the act of the President was properly styled a commutation of sentence, but the counsel of Perovich

urge that when the attempt is to commute a
punishment to one of a different sort it
cannot be done without the convict's consent."
* * *

"We will not go into history, but we will
say a word about the principles of pardons in
the law of the United States.  A pardon in our
days is not a private act of grace from an
individual happening to possess power.  It is
a part of the Constitutional scheme.  When
granted it is the determination of the ulti-
mate authority that the public welfare will
be better served by inflicting less than what
the judgment fixed." * * *

"When we come to the commutation of death
to imprisonment for life it is hard to see
how consent has any more to do with it than it
has in the cases first put.  Supposing that
Perovich did not accept the change, he could
not have got himself hanged against the Execu-
tive order.  Supposing that he did accept, he
could not affect the judgment to be carried
out.  The considerations that led to the
modification had nothing to do with his will.
The only question is whether the substituted
punishment was authorized by law--. . ." * * *

"We cannot doubt that the power extends
to this case.  By common understanding impris-
onment for life is a less penalty than death.
It is treated so in the statute under which
Perovich was tried," * * *

## SUMMARY

1.  The U. S. Supreme Court has not held the death
penalty unconstitutional, per se, but has declared Texas
procedure in the assessment of death unconstitutional.

2.  Present death penalties at any stage between
jury verdict and granting of a new trial may be commuted
to life.

3.  The Board of Pardons and Paroles may now act to

recommend commutation upon application from officials of the convicting court.

4.   The Board has no obligation to go forward in causing convicting courts to re-sentence (under nunc pro tunc) those commuted.

5.   The Board may recommend (and the Governor may grant) commutation over a protest from the condemned person.

Respectfully submitted,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by Howard M. Fender
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman
W. E. Allen, Co-Chairman

Max P. Flusche
Lang A. Baker
Robert L. Lattimore
Gordon Cass

SAMUEL D. McDANIEL
Staff Legal Assistant

ALFRED WALKER
Executive Assistant

NOLA WHITE
First Assistant